**D Anthony Robinson Law Firm, PLLC**
Anthony Robinson (Bar Id. 24070515)
8325 Broadway Suite 202 PMB 85
Pearland, Texas 77581
(346) 837-0915
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF TEXAS

| | |
|---|---|
| GERALD ADAMS<br><br>                Plaintiff,<br>      v.<br><br>JULIA JONES, CHRYS CHILDS, FUBU RADIO, INC., YOU42 INC., AND JOHN DOES 1-100<br><br>                Defendants,<br><br>and<br><br>AND INSTAGRAM (IN REM), YOUTUBE (IN REM), AND TIKTOK (IN REM). | **<u>Civil Action</u>**<br><br>**COMPLAINT AND JURY DEMAND** |

1

Plaintiff Gerald Adams, by and through counsel D. Anthony Robinson, and for his Complaint against the above-named Defendants states and alleges the following:

1. Plaintiff Gerald Adams (hereinafter "Adams") is and was a business professional who provided business consultancy in a variety of fields not limited to accounting, finance, and business development.

2. Defendant Julia Jones is an adult resident of the State of New Jersey, and can be served with process at 320 Adolphus Avenue, Unit 512, Cliffside Park New Jersey.

3. Defendant FUBU Radio Inc. (hereinafter "FUBU Radio") is a corporation located in New York City and can be served with process by serving its registered agent Keith C. Perrin Jr. at 100-05 92nd Avenue #206 Richmond Hill, NY, 11418.

4. Defendant You42Inc. (hereinafter "You42") is a corporation with a principal place of business at 202 Tribble Gap Rd STE 300, Cumming, GA 30040 and can be served with process by serving its registered agent Chris Moreau at 11000 Alpharetta Highway, Roswell, GA, 30076.

5. Defendant "Chrys Childs"(hereinafter "Ms. Childs") is an individual and can be served with process at her place of employment located at 100-05 92nd Avenue #206 Richmond Hill, NY, 11418.

6. Defendant Instagram is a social media platform owned by Meta Platforms, Inc., with principal place of business at 1601 Willow Road, Menlo Park, California 94025, and is joined as an in rem defendant. Instagram can be served with process through its registered agent Corporation Service Company at 211 E. 7th Street Suite 620 Austin, Texas 78701.

7. Defendant YouTube is a video sharing platform owned by Google LLC, with principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043, and is joined as an in rem defendant. YouTube can be served with process through its registered agent Corporation

Service Company at 211 E. 7th Street Suite 620 Austin, Texas 78701.

8. Defendant TikTok is a social media platform owned by TikTok Inc., with principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230, and is joined as an in rem defendant. TikTok can be served with process through its registered agent Corporation Service Company at 211 E. 7th Street Suite 620 Austin, Texas 78701.

9. Instagram, YouTube, and TikTok are named as in rem defendants in this action because Plaintiff seeks court authority over these platforms to: a) Remove the defamatory content described herein from their respective platforms; b) Preserve all evidence related to the defamatory content, including but not limited to user account information, IP addresses, posting histories, and all metadata associated with the defamatory publications; c) Comply with any injunctive relief this Court may order regarding the takedown of defamatory content; and d) Provide information necessary to identify all individuals responsible for posting, sharing, or otherwise disseminating the defamatory content at issue.

10. Plaintiff does not seek monetary damages from these in rem defendants at this time, but rather seeks their compliance with Court orders regarding the preservation and removal of content that has harmed Plaintiff's reputation and business.

11. Jurisdiction is proper pursuant to, inter alia, 28 U.S.C. 1332 because there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Additionally, personal jurisdiction over the Defendants is proper because they purposefully directed their tortious activities toward Texas, knowing that Plaintiff is a Texas resident and conducts his business in Texas, and that the brunt of the harm from their defamatory statements would be felt by Plaintiff in Texas. Defendants' actions were expressly aimed at Texas with knowledge that the effects of their conduct would cause harm in this forum.

12. Venue is proper in this Court pursuant to, inter alia, 28 U.S.C. 1391(b)(2), because a

substantial part of the events or omissions giving rise to the claims occurred in this district. Specifically, Defendants' defamatory statements concerned Plaintiff's professional activities in Texas, were accessible to and viewed by Texas residents, including Plaintiff's Texas-based clients and business associates, and caused substantial harm to Plaintiff's Texas-based business and reputation. Additionally, the in rem Defendants Instagram, YouTube, and TikTok maintain interactive websites and applications that are continuously and systematically accessed by Texas residents, including those who viewed the defamatory content regarding Plaintiff.

13. The exercise of jurisdiction over the non-resident Defendants is consistent with constitutional due process requirements because Defendants knew that Plaintiff is a Texas resident whose business is substantially based in Texas, and thus knew that the primary effects of their defamatory statements would be felt in Texas. This satisfies the 'effects test' established in Calder v. Jones, 465 U.S. 783 (1984), and adopted by the Fifth Circuit and Texas courts.

**FACTUAL ALLEGATIONS**

14. Plaintiff Gerald Adams is a licensed CPA who conducts a substantial amount of his business in Texas. Mr. Adams enjoys a stellar reputation among his friends, family, and acquaintances, and is and was highly regarded by members of the community throughout the sports and entertainment industry.

15. Defendant Julia Jones is the ex-fiancé of Gerald Adams

16. Defendant Chrys Childs is a friend of Julia Jones who along with Jones and the other Defendants orchestrated a plan to defame Plaintiff Adams in order to promote their own business interests.

17. Defendants FUBU Radio and You42 own and operate the websites fuburadio.com and you42inc.com. They publish nationally distributed content across social media and radio not limited

to tiktok, twitter, YouTube and others.

18. In or around December of 2024, Plaintiff Adams discovered that he was the putative subject of a multi-hour radio segment featuring Julia Jones and Chrys Childs which included false, misleading, defamatory statements about Mr. Adams. In addition to making the false, defamatory, and misleading statements to harm Mr. Adams, Defendants also used the salacious lies to promote their own personal brands, FUBU Radio, and You42. False and misleading statements include but are not limited to:

    a. Julia Jones and Chrys Childs falsely claim that Mr. Adams was married while engaged to Julia Jones. Mr. Adams has never been married, has no children, and has only been engaged to Julia Jones;

    b. Julia Jones falsely claims that Mr. Adams attempted to "pull a life insurance policy on Julia Jones." This claim is also false as Mr. Adams has never attempted to obtain a life insurance policy with the beneficiary being Julia Jones;

    c. Julia Jones and Chrys Childs falsely claim that Mr. Adams committed mortgage fraud by concocting a false story that $63,000 dollars vanished from the process of closing on a residence;

    d. Julia Jones and Chrys Childs falsely accused Mr. Adams of committing Fraud on a stock account where Mr. Adams was the primary account holder and had full authorization and rights attributable to the primary account holder on such account;

    e. Julia Jones and Chrys Childs falsely accused Mr. Adams of "theft of funds" in the amount of $700,000.00;

    f. Julia Jones and Chrys Childs falsely stated that Mr. Adams was involved in a kickback scandal with the NCAA;

      g.      Julia Jones and Chrys Childs falsely stated that Mr. Adams had a criminal background. Mr. Adams has never been arrested and does not have any criminal convictions; and

      h.      Julia Jones and Chrys Childs falsely accused Mr. Adams of identity theft, fraud, and forgery, although Mr. Adams has never been charged, alleged, or convicted of these allegations in any court.

19.      All of the aforementioned statements are patently false and defamatory, and the same were made intentionally and recklessly to damage the reputation of Plaintiff Adams.

20.      Defendants FUBU Radio and You42 published the false and defamatory statements on their platforms that are distributed Nationally.

21.      In addition to the false and defamatory statements listed above, Julia Jones has made other false and defamatory statements against Mr. Adams and consistently harassed Mr. Adams and his family, including his elderly mother, Ms. Adams, who is 80 years of age.

22.      In a deposition occurring in September 2024, Julia Jones falsely stated that Mr. Adams had been arrested for distribution of narcotics on multiple occasions.

23.      In that same deposition in September 2024, Julia Jones also falsely accused Mr. Adams of being in a car accident with a woman from Newark, New Jersey. Mr. Adams has no knowledge of whom this woman is that Julia Jones referenced.

24.      In multiple Instagram posts made and continues to make false claims and accusations. In one post Julia Jones falsely accused Mr. Adams of being married to a woman in New York and laundering money through that woman's non-profit. Mr. Adams has never been married and again has no knowledge of who the woman Julia Jones is referring to is.

25. Julia Jones has made false statements to the police alleging that Mr. Adams was a part of a string of storage unit robberies in Edgewater, New Jersey.

26. Julia Jones has made the false statements above to business contacts of Mr. Adams, neighbors of Mr. Adams, and others in an attempt to harm Mr. Adams reputation personally and financially.

27. Additionally, Julia Jones has misappropriated Mr. Adams' name, image, and likeness creating a fake Instagram page with all of the false allegations listed above. That page can be found at https://www.instagram.com/who_is_fan_boy512/.

28. FUBU Radio, Chrys Childs, and You42 used the hashtag #whoisfanboy to promote the fake Instagram page misappropriating Mr. Adams' name image, and likeness. This hashtag was used on the defamatory radio show hosted by Chrys Childs. Although Defendants did not explicitly refer to Mr. Adams by name during the FUBU radio broadcasts, the defamatory statements were clearly "of and concerning" Mr. Adams under Texas law. The statements contained numerous specific details, circumstances, and descriptions that would reasonably identify Mr. Adams to listeners familiar with him or his circumstances. These identifying details included, but were not limited to: a) References to his relationship with Defendant Julia Jones as her ex-fiancé; b) Specific allegations regarding financial transactions that were unique to Mr. Adams' circumstances; c) References to his profession as a CPA and work in the sports and entertainment industry; d) Use of the hashtag #whoisfanboy which directly connected to the Instagram page containing Mr. Adams' actual photographs; and e) Discussions of specific personal details that listeners familiar with Mr. Adams would recognize as uniquely identifying him. Under Texas defamation law, a plaintiff need not be mentioned by name if the statements contain sufficient information for those familiar with the plaintiff to understand that the statements referred to him. Here, listeners familiar with Mr. Adams or

7

his circumstances would readily understand that he was the subject of Defendants' defamatory statements. Furthermore, Defendants' use of the same allegations across multiple platforms, some of which did explicitly identify Mr. Adams, creates a context in which listeners of the radio broadcast would understand the statements to be about Mr. Adams. See Dallas Morning News, Inc. v. Tatum, 554 S.W.3d 614, 624 (Tex. 2018) (considering a defamation claim and noting that statement need not refer to the plaintiff by name if people who are acquainted with the plaintiff reasonably understand from reading the statement that it referred to the plaintiff).

29.     Julia Jones has also made false statements against Mr. Adams' brother Aaron Adams.

30.     In December 2023, Julia Jones submitted a false complaint to the Texas Bar falsely accusing Aaron Adams of unethical conduct. The Texas Bar dismissed this complaint.

31.     In January 2024 in the Chambers of Judge O'Dwyer in Bergen County, in addition to making false accusations against Mr. Adams, Julia Jones falsely accused Aaron Adams of unethical conduct. Judge O'Dwyer informed Julia Jones that Aaron Adams had not committed any unethical acts.

32.     Julia Jones on numerous occasions accused Aaron Adams of committing mortgage fraud by not properly making disclosures in the closing process of the home where she is listed on the deed. Aaron Adams was not Julia Jones's closing attorney. Julia Jones's closing attorney was AJ Cardile who was referred to Julia Jones by her friend and was responsible for providing Julia Jones with all of the closing documents.

33.     In an August 2024 letter to the Bergen County Superior Court, Julia Jones once again falsely accused Aaron Adams of withholding client files even though Aaron Adams was not Julia Jones attorney in the matter and had no duty to share any information with Julia Jones.

34.     Julia Jones has made numerous false statements that Aaron Adams was involved in

8

scams and fraudulent behavior

35. Julia Jones has repeatedly berated Mr. Adams' mother, communicating threatening messages in order to intimidate Mr. Adams mother.

36. In January 2025, Plaintiff's counsel attempted to contact Defendants to request that the defamatory publications and social media pages be removed.

37. Specifically, on January 29-30, 2025, Plaintiff's counsel, Attorney Anthony Robinson, sent multiple formal written notices pursuant to the Texas Defamation Mitigation Act (Tex. Civ. Prac. & Rem. Code § 73.055) to all Defendants via FedEx and USPS Certified Mail. These letters requested retraction, clarification, or correction of the defamatory statements made about Plaintiff and served as a demand to immediately cease and desist from any further dissemination of those statements. The following are the tracking information for those letters.

    a. Defendant Julia Jones was sent a formal notice via FedEx tracking number 771778452820.

    b. Defendant Chris Moreau of You42 Inc. was sent a formal notice and litigation hold letter via FedEx tracking number 771778550290.

    c. Defendant Keith C. Perrin Jr. as registered agent of FUBU Radio was sent a formal notice via FedEx tracking number 771778613196 and a litigation hold letter via FedEx tracking number 771778667119.

    d. Defendant FUBU Radio's registered agent was sent a formal notice and litigation hold letter via USPS Certified Mail tracking number 70063450000108263203.

    e. Defendant You42 Inc.'s registered agent was sent a formal notice via USPS Certified Mail tracking number 70063450000108263204.

    f. Defendant Keith Perrin was also sent personally a formal notice and litigation hold letter via USPS Certified Mail tracking number 70150920000070876464.

38. Defendants all refused to take receipt of the letters and they were all returned to

Plaintiff.

39. After refusing the correspondence Defendant Julia Jones accelerated her malicious defamatory campaign about Plaintiff by making additional social media postings falsely claiming that Plaintiff, among other false allegations, is a narcotics trafficker, involved in robberies, and was a known human trafficker.

## COUNT I: DEFAMATION

40. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

41. Defamatory communications posted on the internet are properly characterized as libel, which does not require proof of special damages.

42. Defendants made false statements to third parties about Mr. Adams on their various social media accounts, websites, and other means of content and communications distribution not limited to statements that Mr. Adams had a criminal record, Mr. Adams committed the crimes of identity theft, fraud, forgery, and was married.

43. Defendants published the false and defamatory material to internet users across the United States and around the world. Such publications contained false and defamatory statements of fact.

44. Defendants had a duty to investigate the statements made about Mr. Adams.

45. Defendants acted with the requisite degree of fault in making these statements. As private individuals, Defendants Jones and Childs acted negligently by failing to verify the truth of their statements before publication. Additionally, Defendants acted with actual malice, as they knew the statements were false or acted with reckless disregard as to their truth or falsity, as evidenced by

their continued publication and expansion of these claims after the return of the Notices sent by Plaintiff's counsel in January 2025.

46. The defamatory material is libel per se because it is calculated on its face to cast assertions that Mr. Adams is a repeat criminal who cannot be trusted.

47. Defendants' false statements proximately caused Mr. Adams to suffer a loss of reputation, be deprived of benefits of confidence as a financial professional and social acceptance and to be held in ridicule while suffering personal humiliation, emotional distress, and pain and suffering.

## COUNT II: TRADE LIBEL AND BUSINESS DISPARAGEMENT

48. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

49. The Defendants' statements about Mr. Adams as referenced above constitute disparaging false statements. The Defendants' claims about Mr. Adams' criminal background, the commission of the crimes of identity theft, fraud, and other statements are verifiably false.

50. Defendants espoused and published these statements with malice based on Chrys Child's admission that she liked putting the "boys on blast." Throughout the production Defendants repeatedly referenced Mr. Adams standing as a CPA and made numerous false allegations demonstrating their malicious intent.

51. Defendants' statements were made without any legal privilege or justification. The statements were not protected opinions, fair comments, or any other form of privileged speech under Texas law. Defendants were not acting in any legally protected capacity when publishing these false and disparaging statements about Mr. Adams.

11

52. As a direct and proximate result of Defendants' false and disparaging statements, Mr. Adams has suffered special damages in the form of specific pecuniary losses, including but not limited to: loss of specific client relationships, cancellation of professional engagements, reduction in billable hours, and measurable decline in business revenue. These special damages are separate and distinct from the general reputational harm alleged in Count I and represent specific economic losses to Mr. Adams' CPA practice. Defendants have and continue to cause harm to Mr. Adams. Defendants are aware that they possess a powerful national platform that they weaponized to cause Mr. Adams a loss of business reputation and business.

**COUNT III: INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACTS**

53. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

54. Defendants gave widespread publicity to matters concerning Plaintiff Adams' personal life by disseminating false information about his alleged criminal background, marital status, financial affairs, and professional conduct on their radio program, social media platforms, and websites that reach a national audience.

55. In addition to making false statements about Mr. Adams, Defendants also purportedly shared private tax documents that they alleged belonged to Mr. Adams, exposing his personal financial information to the public at large.

56. The publication of this private information would be highly offensive to a reasonable person of ordinary sensibilities. No reasonable person would want false allegations of criminal conduct, fraudulent business practices, or their confidential financial documents exposed to the public.

57. The matters publicized by Defendants are not of legitimate public concern. Mr. Adams

is a private individual whose personal and financial affairs are not newsworthy or of general interest to the public. The defendants exploited Mr. Adams' private information solely to generate publicity for themselves and their business ventures.

58. As a direct and proximate result of the Defendants' invasion of his privacy, Plaintiff suffered personal humiliation, injury to his reputation, emotional distress, and mental anguish.

59. Defendants' actions were undertaken with malice, as evidenced by Chrys Child's admission that she liked putting the "boys on blast," and by their deliberate targeting of Mr. Adams' professional standing as a CPA, demonstrating their intent to harm rather than to address any matter of public concern.

## COUNT IV: MISAPPROPRIATION OF NAME AND LIKENESS

60. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

61. Defendants appropriated Mr. Adams' name and likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose. Specifically, as alleged in paragraphs 27 and 28, Julia Jones created a fake Instagram page using Mr. Adams' photos and likeness (at https://www.instagram.com/who_is_fan_boy512/), and FUBU Radio, Chrys Childs, and You42 used the hashtag #whoisfanboy to promote this unauthorized page.

62. Mr. Adams can be clearly identified from the publications despite not being referred to by name. The Instagram page used actual photographs of Mr. Adams that would be recognizable to those who know him, and the hashtag #whoisfanboy, while not using his actual name, was clearly designed to reference and identify Mr. Adams through context and implication. A rea18sonable person would understand that the content referred to Mr. Adams based on the specific details discussed that uniquely pertain to him.

13

63. Defendants derived a commercial advantage and benefit from the misappropriation of Mr. Adams' name and likeness. As alleged in paragraph 28, Defendants used these misappropriations "to promote their own personal brands, FUBU Radio, and You42." The defendants exploited the commercial value and publicity associated with Mr. Adams' identity and reputation as a CPA in the sports and entertainment industry to increase their audience, enhance their public profiles, and generate revenue.

64. This misappropriation was not for news reporting or other protected purposes, but rather was part of a commercial enterprise designed to benefit the defendants financially and to harm Mr. Adams' reputation.

65. As a direct and proximate result of Defendants' misappropriation, Mr. Adams has suffered damages including loss of control over his public image, mental anguish, and economic losses resulting from the unauthorized commercial exploitation of his identity.

## COUNT V: DEFAMATION PER SE

66. Plaintiff incorporates the allegations set forth above and further alleges and states:

67. Defendants' statements on the Defamatory publication, social media pages, and radio broadcasts constitute defamation per se under Texas law because they: a) Impute the commission of crimes to Plaintiff, including but not limited to identity theft, fraud, forgery, theft of funds, narcotics trafficking, and involvement in robberies; b) Impute dishonesty, fraud, and unethical conduct that directly injures Plaintiff in his profession as a licensed CPA, including false allegations of theft of funds, mortgage fraud, stock account fraud, and kickback schemes as alleged in paragraphs 18.c, 18.d, 18.e, and 18.f; and c) Falsely state that Plaintiff has engaged in conduct that would subject him to disgrace and public ridicule.

68. These statements are defamatory per se under Texas law because they are so obviously

harmful to Plaintiff's reputation that general damages may be presumed without proof of special damages. See Hancock v. Variyam, 400 S.W.3d 59, 63 (Tex. 2013) (holding that "defamation per se has involved statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish"); In re Lipsky, 460 S.W.3d 579, 593-94 (Tex. 2015) (recognizing that "defamation per se refers to statements that are so obviously harmful that general damages may be presumed")

69.     Under Texas law, statements that injure a person in his office, profession, or occupation or impute the commission of a crime are considered defamatory per se. Hancock, 400 S.W.3d at 64; see also WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). The statements made by Defendants about Plaintiff's alleged criminal activity and professional misconduct as a CPA fall squarely within these recognized categories of defamation per se.

70.     Defendants knew or reasonably should have known that their defamatory statements described herein about Plaintiff are false, or in the alternative, made and published defamatory statements about Plaintiff with reckless disregard for the truth.

71.     Plaintiff is a non-media person who is entitled to an inference that Defendants knew that the statements made and published about Plaintiff are false or were made with reckless disregard for the truth as shown more specifically above.

72.     Defendants' statements were motivated by personal enmity and malice toward Plaintiff as evidenced by their refusal to remove the defamatory publications after being contacted by Plaintiff's counsel and by their subsequent escalation of defamatory claims.

73.     As a proximate cause of the Defendants' actions set forth above, Plaintiff has suffered damages to his reputation, professional standing, mental anguish, and other injuries.

74.     Because the statements constitute defamation per se, the law presumes that Plaintiff

15

has suffered general damages, including damage to reputation and mental anguish. Plaintiff is entitled to recover these presumed general damages as well as special damages that he can prove.

75. Plaintiff is entitled to damages against the Defendants for defamation per se in an amount exceeding the jurisdictional minimum of this case.

## COUNT VI: VEIL PIERCING AND VICARIOUS LIABILITY

76. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

77. The various Defendants consist of individuals, domestic corporations, domestic limited liability companies, and/or business entities of unknown form. Plaintiff is without knowledge at this time to determine the precise ownership structure, control relationships, and financial arrangements among these entities and their principals.

78. Plaintiff alleges, upon information and belief, that discovery may reveal that the corporate forms of the business entity Defendants have been used as a means to perpetrate fraud, evade legal obligations, or circumvent the law. Plaintiff therefore reserves the right to seek to pierce the corporate veil of any entity Defendant if discovery reveals evidence of: a) The use of the corporate entity as a mere tool or business conduit; b) Such unity between corporation and individual that the separateness of the corporation has ceased to exist; c) The corporate form being used to achieve an inequitable result, evade a legal obligation, or perpetrate a fraud; d) Inadequate capitalization; e) Failure to observe corporate formalities; f) Commingling of funds or other assets; g) Diversion of corporate funds to the personal use of the corporation's principals; or h) Other factors recognized under Texas law as justifying disregard of the corporate form.

79. Defendant Chrys Childs is an employee of FUBU Radio. As such, upon information and belief, FUBU Radio is vicariously liable for all tortious acts committed by Chrys Childs while

she was acting within the course and scope of her employment. The defamatory statements and other tortious acts alleged herein were made by Chrys Childs during her employment with FUBU Radio, in her capacity as a host/personality for FUBU Radio, and in furtherance of FUBU Radio's business interests.

### COUNT VI: PERMANENT INJUNCTIVE RELIEF

80. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

81. Under the Erie doctrine, federal courts will generally apply state law when assessing the merits of a request for injunctive relief where jurisdiction is grounded in diversity.

82. Should the Plaintiff prevail on the merits, he is entitled to a permanent injunction under Texas law because he would suffer further irreparable harm without an injunction, the harm to the Plaintiff would vastly exceed the harm to the defendants from the imposition of the injunction; and the public interest would not be adversely affected by an injunction.

83. Specifically, the Defendants should be permanently enjoined from using Plaintiff's name and/or likeness or making any representations giving rise to any inference that Plaintiff ever participated in the activities described herein.

84. Accordingly, an Order of this Court restraining these Defendants from using Mr. Adams's name and/or likeness and/or a preliminary injunction enjoining Defendants from continuing their tortious and wrongful actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

### DESIGNATION OF TRIAL COUNSEL

Plaintiff designates Anthony Robinson as trial counsel.

### DEMAND FOR JURY TRIAL JURY DEMAND

Plaintiffs demand a trial by jury of all issues triable by a jury.

Dated: May 4, 2025                           Respectfully submitted,

                                             D. Anthony Robinson

                                                  /s/ Anthony Robinson
                                             _____

                                             By: Anthony Robinson