**D Anthony Robinson Law Firm, PLLC**
D. Anthony Robinson (Federal Bar No. 2827429)
8325 Broadway Suite 202 PMB 85
Pearland, Texas 77581
(346) 837-0915
Attorney for Plaintiff Gerald Adams

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **GERALD ADAMS,** <br> Plaintiff, <br><br> v. <br><br> **JULIA JONES, CHRYS CHILDS, FUBU RADIO, INC., YOU42 INC., AND JOHN DOES 1-100,** <br><br> Defendants. | **CIVIL ACTION NO. 4:25-cv-02012** <br><br> **EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR HEARING** |

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff Gerald Adams, by and through counsel, pursuant to Fed. R. Civ. P. 65, respectfully moves the Court to enter a temporary restraining order and preliminary injunction against Defendants Julia Jones, Chrys Childs, FUBU Radio, Inc., and You42 Inc. (collectively, "Defendants"), directing them to immediately remove all defamatory content targeting Plaintiff from Instagram and YouTube, to disclose all persons to whom such statements have been communicated, and to be restrained from publishing or republishing similar defamatory statements on any social media platform or internet service. In support thereof, Plaintiff respectfully submits:

1

**FACTUAL BACKGROUND**

1.    Plaintiff Gerald Adams is an accomplished professional whose livelihood depends entirely upon his reputation in his professional community. At all times material hereto, Plaintiff has maintained an unblemished professional record and has never been arrested, charged, convicted, or otherwise implicated in any criminal conduct.

2.    On August 20, 2025, Plaintiff Adams filed the First Amended Complaint in this action. (ECF No. 45.)

3.    On August 25, 2025, Plaintiff Adams filed his Motion for a Temporary Restraining Order and Preliminary Injunction.

4.    On March 31, 2026, the Court denied Plaintiff's motion for a preliminary injunction based on Plaintiff's inability to show irreparable harm, notwithstanding the Court's finding that Plaintiff's claims are substantially likely to succeed on the merits.

5.    Although Defendant Jones is well aware that Plaintiff Adams is a licensed CPA, that he maintained an accounting practice in Texas, and that he is a Texas resident (ECF 45, ¶ 2), she has continued to publish false and defamatory statements about Plaintiff Gerald Adams (ECF 45, ¶ 1) to Texas residents and businesses via YouTube, Instagram, and TikTok (ECF 45, ¶¶ 22, 24, 27), continued to contact Texas businesses and residents with defamatory statements about Plaintiff Adams, and continued to mail defamatory content to Texas residents, all in order to cause harm to Plaintiff Adams.

6.    Since the filing of Plaintiff Adams' initial TRO motion, Defendant Jones has published over 30 new posts across social media platforms targeting Plaintiff Adams. A complete list with associated URLs is being compiled and will be submitted as a supplemental exhibit.

7.      These statements include false accusations of criminal conduct, human trafficking, fraud, drug trafficking, money laundering, and other fabricated misconduct (ECF 45, ¶¶ 20g, 21, 39), all made without any basis in fact and with the intent to destroy Plaintiff's reputation as a Certified Public Accountant in the State of Texas (ECF 45, ¶ 10).

8.      On August 1, 2025, this Court ordered Defendant Jones to produce the case number for her complaint filed with the FBI. (ECF 42.) Nearly nine months later, Defendant Jones has not complied. She remains in open violation of this Court's order and has continued to defy the Court's authority throughout this litigation. This pattern of noncompliance reinforces that no lesser relief short of a court-ordered injunction will stop the ongoing harm to Plaintiff.

9.      Defendant Jones is aware of Plaintiff's standing as a Texas CPA (ECF 45, ¶ 14), his business activities in Texas (ECF 45, ¶ 14), and his reputational standing (ECF 45, ¶ 14). His professional standing and business reputation have been directly harmed by these publications. (ECF 45, ¶ 73.)

10.     The defamatory content has already caused Plaintiff to lose life-changing professional opportunities, including a written offer of employment or engagement from a professional sports franchise that was rescinded after an FBI Special Agent conducting a background investigation reviewed Jones's defamatory posts, as well as his entire accounting practice. (ECF 45, ¶ 78.) Despite being served with this lawsuit, Defendant Jones has continued to escalate the campaign of defamation. (ECF 45, ¶ 39.)

11.     The cumulative effect of Defendants' ongoing campaign of internet defamation has caused the complete loss of Plaintiff's professional CPA practice. Plaintiff's clients and professional contacts have been directly exposed to these false allegations, causing them to sever their relationships with Plaintiff. Plaintiff has lost, and continues to lose, professional

engagements, referrals, and revenue as a direct and proximate result of Defendants' conduct. Plaintiff is current in jeopardy of losing two strategic consulting clients if the content is not removed. Unless this Court grants injunctive relief, Plaintiff faces imminent and irreversible financial ruin due to the loss of all business. See Declaration of Gerald Adams, attached hereto and incorporated herein as Exhibit A.

12. The defamatory content remains published, publicly accessible, and actively searchable on Instagram and YouTube as of the date of this filing. Nothing in the record, nor in Defendants' conduct, suggests any voluntary cessation of the ongoing publication. Plaintiff now seeks a Temporary Restraining Order directing Defendant Jones to remove the defamatory content from all platforms. (ECF 45, ¶¶ 24, 27, 39.)

## ARGUMENT

13. To prevail on a motion for a temporary restraining order and preliminary injunction, Plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which there is no adequate remedy at law; (iii) that the threatened injury outweighs any harm that the injunction may cause Defendants; and (iv) that granting the injunction will not disserve the public interest. Clark v. Prichard, 812 F.2d 991, 993 (5th Cir. 1987); Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974) (en banc). Each element must be satisfied. Mississippi Power and Light Co. v. United Gas Pipeline, 760 F.2d 618, 621 (5th Cir. 1985).

### I. PLAINTIFF IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS

14. Defamation under Texas law requires: (1) publication of a false statement of fact to a third party; (2) that the statement was defamatory concerning the plaintiff; (3) fault on the part of the publisher; and (4) damages. Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990); WFAA-

TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). Statements are defamatory per se when they falsely charge a person with the commission of a crime or tend to injure a person in their office, profession, or occupation. Tex. Civ. Prac. & Rem. Code Ann. § 73.001.

15.    Defendants' statements that Plaintiff has a criminal record, committed fraud, stole hundreds of thousands of dollars, and engaged in a kickback scandal are classic defamation per se -- they falsely impute criminal conduct and professional misconduct to a person whose entire livelihood rests upon professional integrity. Plaintiff's Complaint sets forth these false statements with specificity. The 2007 Order of Dismissal disposing of all charges against Plaintiff demonstrates that when Defendants revived and broadcast these false narratives in 2024, 2025 and 2026, they acted with knowledge of their falsity, or at minimum with reckless disregard for the truth. Hagler v. Proctor & Gamble Mfg. Co., 884 S.W.2d 771, 772 (Tex. 1994). Actual malice is thereby established on the present record.

16.    Because all of Defendants' material factual allegations are provably false, the merits of this action strongly favor Plaintiff. See MMR Group Inc. v. Dow Jones & Co., Inc., 987 F. Supp. 535, 538 (S.D. Tex. 1997). Plaintiff's likelihood of ultimate success is substantial. The court has already acknowledged this in it's written order on March 31, 2026 that Plaintiff is "significantly likely to succeed on the merits of his defamation per se claim"[ECF 56]

## II. PLAINTIFF FACES IMMEDIATE AND IRREPARABLE HARM

17.    This Court previously denied Plaintiff's original TRO motion on the ground that Plaintiff had not yet demonstrated his business would cease to exist. That standard has now been met, and then some. Since the Court's order of August 25, 2025, Jones's defamatory content has remained live and Jones has continued to publish false statements and contact Plaintiff's business associates. The result is the complete collapse of Plaintiff's accounting practice. The business does

not merely face a threat to its existence. It no longer exists. Under the standard this Court itself articulated, irreparable harm is now established. The harm has now extended beyond the accounting practice. Plaintiff received a written offer of employment or professional engagement from a professional sports franchise. An FBI Special Agent conducted a background investigation of Plaintiff in connection with that opportunity and, after reviewing Jones's defamatory posts, concluded that he did not believe the allegations Jones had published. Despite the agent's conclusion that Jones's allegations lacked credibility, the sports franchise rescinded the offer. The reach and notoriety of Jones's defamatory posts cost Plaintiff a documented, specific, professional opportunity with a major professional sports organization. This is not speculative harm. It is documented harm, with a named employer, a written offer, and a written rescission, all traceable directly to Jones's conduct.

18.     The relief Plaintiff seeks is well within the equitable authority of this Court and consistent with what federal courts in this circuit have granted under materially identical circumstances. In Hawbecker v. Hall, No. 5:14-cv-1010-XR (W.D. Tex.), a court in this circuit entered a temporary restraining order directing a defendant to remove defamatory social media content, disclose persons contacted, and refrain from further defamatory publication -- precisely the relief requested here. The defendant in that case, like Jones, was an individual who had targeted the plaintiff through social media, contacted the plaintiff's professional associates, and refused to cease publication despite litigation. This Court is not being asked to do anything novel. It is being asked to exercise the same equitable authority that has already been exercised in this circuit under facts that closely parallel the present case.

19.     Social media defamation is not a one-time event -- it is a continuing tort. Each new post, share, or comment causes fresh harm. Jones has continued to publish after the Court's August

6

25, 2025 order and has continued to contact Plaintiff's business associates. A damages award at the conclusion of this litigation, which remains years away, cannot compensate for the harm that is accumulating right now, today, with each day the content remains live and searchable. The ongoing and continuous nature of Defendants' conduct is itself powerful evidence that irreparable harm exists and that legal remedies are inadequate.

20.    The harm Plaintiff has suffered extends beyond the loss of his accounting practice. It encompasses the destruction of personal and professional relationships that cannot be reduced to a dollar figure with any certainty. Friends have distanced themselves. Family members have been affected. Professional and community groups in which Plaintiff was a participant have been poisoned by Jones's false narrative. The Fifth Circuit and courts generally recognize that loss of personal and professional relationships constitutes qualitative harm that money cannot adequately remedy. These are not categories of loss that a jury can calculate; they are categories of loss that equity was specifically designed to address.

21.    Reputational harm of the kind Plaintiff has suffered is presumptively difficult to quantify. Unlike lost profits, there is no reliable methodology for calculating what a friendship is worth, what a professional referral network is worth, or what standing in a community is worth. This incalculability cuts directly against any argument that Plaintiff has an adequate remedy at law. Where the nature of the injury defies measurement, money damages are by definition inadequate, and injunctive relief is the only appropriate remedy.

22.    The category of harm that most powerfully demonstrates the inadequacy of any legal remedy is one that, by its nature, cannot be documented: the invisible pipeline of future business that never reaches Plaintiff because Jones's posts are encountered first. Plaintiff cannot identify, quantify, or document every prospective client who found Jones's posts and decided not

to call. A jury cannot award damages for clients Plaintiff does not know he lost. No accounting methodology, no expert witness, and no damages model can calculate the value of relationships that never formed, referrals that were never made, and engagements that were never sought -- all because Jones's content appears when Plaintiff's name is searched.

23.     The harm is also irreversible in a manner that is unique to the internet age. Even if Jones were to take down her posts today, the internet has already created a permanent record. Screenshots of her defamatory content have spread. Platform algorithms have amplified the reach of her statements to audiences far beyond her original followers. The Fifth Circuit recognizes that harms that cannot be undone weigh heavily in favor of injunctive relief. A court order requiring removal now limits the continued compounding of a harm that, once fully embedded in the digital ecosystem, can never be completely erased.

24.     What cannot be documented, quantified, or remedied by a money judgment is the entire universe of future relationships, clients, and opportunities that will never materialize because Jones's posts remain live and continue to be found by every person who searches Plaintiff's name. The accounting practice is gone. A check cannot rebuild it. The loss of a professional practice dependent upon personal reputation, client trust, and ongoing referral relationships constitutes precisely the category of irreparable harm that equity was designed to remedy. As the court recognized in Ex Parte Tucker, 220 S.W. 75, 76 (Tex. 1920), equity will protect natural and contractual rights from interference by intimidation or coercion. The intangible destruction of professional reputation and client relationships, once fully accomplished, cannot be made whole by money alone. Kinney v. Barnes, 443 S.W.3d 87, 93 (Tex. 2014).

25.     The harm is not speculative and it is not future-oriented -- it has already occurred and continues to deepen with every day the content remains live. Each day of continued publication

8

is a fresh act of defamation. This Court identified the standard. That standard is now satisfied beyond any reasonable dispute.

## III. THE BALANCE OF EQUITIES FAVORS PLAINTIFF

26.     Defendants face no cognizable harm from being directed to remove false statements that they have no legal right to publish. Defamatory speech is not protected under the First Amendment. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 771 (1976); Garrison v. Louisiana, 379 U.S. 64, 75 (1964). Requiring Defendants to delete content that has already been adjudicated, or is substantially likely to be adjudicated, as defamatory imposes no constitutionally protected burden. In contrast, the harm to Plaintiff from continued publication is severe, ongoing, and has already permanently extinguished his professional practice. The balance of equities strongly favors issuance of injunctive relief.

## IV. THE PUBLIC INTEREST IS SERVED BY THE REQUESTED RELIEF

27.     The Texas Legislature has determined that defamation is harmful to the public and has enacted statutory protections against it. Tex. Civ. Prac. & Rem. Code Ann. § 73.001 et seq. Granting this injunction does not operate as a prior restraint on protected speech -- it requires only the removal of false statements targeting a private individual. Kinney v. Barnes, 443 S.W.3d at 93. The public interest is affirmatively served by enjoining the ongoing publication of provably false statements designed to destroy a private citizen's professional life. No public interest is served by permitting Defendants' defamatory campaign to continue unabated.

28.     Moreover, pursuant to Rule 65(b)(1)(B), Plaintiff's counsel certifies that a copy of this Motion has been transmitted to Defendants via the email addresses of record and deposited with the United States Postal Service, postage prepaid. Notice has been provided. Additionally, given the ongoing and escalating nature of the harm, the Court may enter a TRO ex parte under

Rule 65(b)(1)(A) based on the specific facts set forth in the attached Declaration of Plaintiff showing immediate and irreparable injury before Defendants can be heard.

**WHEREFORE,** Plaintiff respectfully prays that this Court enter a Temporary Restraining Order and Preliminary Injunction directing Defendants to:

a. immediately remove the "Who Is Fanboy" Instagram page and all other posts, reels, stories, or content on Instagram containing defamatory statements about Plaintiff;

b. immediately remove or cause to be removed from YouTube all segments, videos, clips, or uploads associated with FUBU Radio, You42 Inc., or any Defendant that contain defamatory statements about Plaintiff;

c. disclose to Plaintiff's counsel within 48 hours the names and contact information of all persons to whom Defendants have communicated defamatory statements about Plaintiff via the internet, social media, email, or any other medium;

d. refrain from publishing, republishing, broadcasting, or causing to be published any further defamatory statements about Plaintiff on any social media platform, website, podcast, broadcast, or internet service;

e. refrain from contacting, communicating with, or transmitting any information about Plaintiff to any professional franchise, team, or organization, any professional sports organization, any prospective employer of Plaintiff, or any business or professional contact of Plaintiff, whether by social media, email, telephone, mail, or any other medium; and

f. to grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**D. ANTHONY ROBINSON LAW FIRM, PLLC**

10

/s/ D. Anthony Robinson

_____

D. Anthony Robinson
Federal Bar No. 2827429
8325 Broadway, Suite 202 PMB 85
Pearland, Texas 77581
(346) 837-0915

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2026, a true and correct copy of the foregoing was served upon Defendant Julia Jones, pro se, at 320 Adolphus Avenue, Unit 512, Cliffside Park, New Jersey 07010, via U.S. Mail, first class, postage prepaid, and electronic mail to the extent an email address is known.

/s/ D. Anthony Robinson

_____

D. Anthony Robinson

11